**WO**

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Charissa Herka, | No. CV-14-2355-PHX-SMM |
| Plaintiff, | |
| v. | **MEMORANDUM OF DECISION AND ORDER** |
| Ray Maybus[1], Secretary of the Navy, et al., | |
| Defendants. | |

Plaintiff Charissa Herka ("Plaintiff") filed her Complaint against Secretary of the Navy, Ray Mabus ("Secretary"), the Board of Correction of Naval Records ("BCNR"), and the Naval Discharge Review Board ("NDRB") (collectively "Defendants"). (Doc. 1.)[2] Plaintiff seeks to change her military service record and her discharge from the U.S. Navy to "Honorable." (Id.) Pending before the Court is Defendants' Motion for Summary Judgment asking the Court to deny Plaintiff relief. (Doc. 20.) The motion is now fully briefed. (Docs. 21-23.)

The Court will grant Defendants' motion for summary judgment, deny Plaintiff relief, and terminate this case.

---

[1] The correct spelling of the last name of the Secretary of the Navy is Mabus.

[2] "Doc." refers to the documents in this Court's file. A certified copy of the administrative record was provided to this Court by the Secretary, Volume 1 on December 14, 2015 (Doc. 15), Volume 2 on December 16, 2016 (Docs. 27-28), and Volume 3 on December 29, 2015 (Doc. 19).

**BACKGROUND**[3]

Plaintiff enlisted in the U.S. Navy on March 16, 2004, and was later assigned to the guided missile destroyer USS Bainbridge. (Doc. 15-2 at 107.) On or about April 11, 2005, Plaintiff acknowledged receipt of a Notice of her Command's intent to initiate administrative separation processing for "misconduct due to drug abuse" ("Notice"). (Id. at 226-27.) The Secretary appointed Plaintiff counsel, Lt. Kelly Lemke, JAG, advised her of her rights, and Plaintiff elected to appear before an Administrative Discharge Board ("ADB"). (Id. at 85, 111-12.) On May 12, 2005, the three-member ADB panel heard evidence and argument concerning the Notice. (Id. at 99-108, 147.)

The particular testimony presented at this proceeding will be throughly addressed *infra* in the Court's Discussion section. The ADB panel unanimously found that the preponderance of the evidence substantiated a finding of Plaintiff's drug abuse, and the ADB panel recommended that Plaintiff be separated with a General Characterization of Service. (Id. at 97, 107-08, 147-48.) On June 20, 2005, Plaintiff's Commanding Officer concurred with the

Board's findings and "strongly recommended" that Plaintiff be separated with a characterization of service as General. (Id. at 97-98.) On June 22, 2005, the Commander of the Naval Personnel Development Command authorized Plaintiff's discharge under a General (Under Honorable Conditions) character of service by reason of misconduct due to drug abuse. (Id. at 96.) Subsequently, Plaintiff was issued a record listing "Misconduct (Drug Abuse)" as the narrative reason for separation, a "General (Under Honorable Conditions)" characterization of service and an "RE-4" reentry code, meaning ineligible for reenlistment. (Doc. 15-3 at 1.)

---

[3] Plaintiff did not submit a controverting statement of facts. LRCiv 56.1(b) provides that in order to dispute the facts submitted by the party moving for summary judgment, the opposing party must submit a controverting statement of facts. Thus, in this case, the statement of facts submitted by Defendants are not in dispute by Plaintiff.

1    On March 8, 2006, Plaintiff applied to the NDRB to upgrade her discharge to
2 "Honorable." (Doc. 15-2 at 82.) On January 26, 2007, a five-member NDRB panel
3 unanimously determined there was "credible evidence in the record that the Applicant used
4 illegal drugs" (id. at 86), and that there had been "no impropriety or inequity" in the
5 processing of Plaintiff's case (id. at 80).

6    On August 9, 2007, the BCNR received an application from Plaintiff to change her
7 reentry code. (Id. at 73-76.) On February 4, 2008, a three-member panel of the BCNR
8 unanimously denied relief, finding that the "evidence submitted was insufficient to establish
9 the existence of probable material error or injustice." (Id. at 69-70.)

10    On January 23, 2009, Plaintiff filed another application with the NDRB and requested
11 an amendment to her narrative reason for separation, her RE-4 reentry code and
12 characterization of service. (Id. at 68.) On November 4, 2009, Plaintiff and her counsel
13 appeared for a live hearing before a five-member panel of the NDRB in the Navy Yard in
14 Washington, D.C. (Doc. 19.) On January 20, 2010, the five-member NDRB panel
15 unanimously denied relief and found that Plaintiff's discharge "was proper and equitable."
16 (Doc. 15-2 at 11.)

17    On or about March 24, 2011, Plaintiff submitted another application for review with
18 the BCNR. (Doc. 15-1 at 62-64.) On April 28, 2011, the BCNR denied Plaintiff's
19 application, which it construed as a request for reconsideration of its February 4, 2008
20 decision. The BNCR advised that that while "at least some of the evidence you have
21 submitted is new, it is not material" – and Plaintiff therefore had failed to satisfy the BCNR's
22 standard for reconsideration. (Id. at 58.)

23    On July 22, 2013, Plaintiff again applied to the BCNR for reconsideration. (Id. at 43-
24 48.) On September 2, 2014, the BCNR notified Plaintiff that her latest application failed to
25 include "any new and material evidence not previously considered by the Board," and it
26 denied her request. (Id. at 28.)

27    On October 23, 2014, Plaintiff filed her Complaint with this Court requesting that the
28 Court "order the BCNR and/or NDRB to upgrade her discharge, or vacate and remand their

decisions." (Doc. 1 at 5.) On April 14, 2015, pursuant to a joint motion, the Court remanded the matter to the BCNR. (Docs. 7-8.) The parties requested a remand to permit the BCNR to review all of the material Plaintiff had submitted with her March 2011 and July 2013 applications, and to "address in detail the issues raised and relief sought" by Plaintiff. (Doc. 7 at 2.) On remand, on July 22, 2015, a three-member BCNR panel, sitting in executive session "carefully considered documentary material consisting of the proceedings of the NDRB; [Plaintiff's] previous applications and reconsideration requests; [Plaintiff's] naval record and applicable statutes, regulation and policies; and supplemental guidance issued by the Secretary of Defense to military correction boards regarding the treatment of discharge upgrade requests by veterans claiming Post-Traumatic Stress Disorder" ("PTSD"). (Doc. 15-1 at 3.)

In its July 22, 2015 decision, the BCNR panel denied relief, finding that "there was insufficient evidence to support [Plaintiff's] allegations and the misconduct she committed while in the service was too serious to warrant an honorable characterization of service." (Id. at 4-5.) Addressing Plaintiff's assertion that the Secretary of Defense's recent memorandum regarding PTSD applies to her case, the BCNR panel found that the memorandum did not apply to cases, like this, that involve a characterization of service of "Honorable" (as opposed to "Under Other Than Honorable Conditions"). (Id. at 6.) The BCNR panel also found that Plaintiff's drug-related misconduct was "too serious" to warrant relief despite her alleged PTSD. (Id. at 6.)

It is undisputed that Plaintiff has exhausted all of her administrative remedies and Plaintiff now seeks review of Defendants' final decision that denied her relief. (Doc. 1.) The final agency action that is subject to this Court's judicial review is the BCNR's July 22, 2015 Decision. (Doc. 15-1 at 3-6.)

## STANDARD OF REVIEW

*Summary Judgment*

"A party may move for summary judgment, identifying each claim or defense–or the part of each claim or defense–on which summary judgment is sought." Fed. R. Civ. P. 56(a)

A court must grant summary judgment if the pleadings and supporting documents, viewed in the light most favorable to the nonmoving party, show "that there is no genuine issue as to any material fact and the movant is entitled to judgment as a matter of law." Id.; see Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986); Jesinger v. Nevada Fed. Credit Union, 24 F.3d 1127, 1130 (9th Cir. 1994). Substantive law determines which facts are material. See Anderson v. Liberty Lobby, 477 U.S. 242, 248 (1986); see also Jesinger, 24 F.3d at 1130. "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." Anderson, 477 U.S. at 248. The dispute must also be genuine, that is, the evidence must be "such that a reasonable jury could return a verdict for the nonmoving party." Id.; see Jesinger, 24 F.3d at 1130.

A principal purpose of summary judgment is "to isolate and dispose of factually unsupported claims." Celotex, 477 U.S. at 323-24. Summary judgment is appropriate against a party who "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Id. at 322; see also Citadel Holding Corp. v. Roven, 26 F.3d 960, 964 (9th Cir. 1994). The moving party need not disprove matters on which the opponent has the burden of proof at trial. See Celotex, 477 U.S. at 323. The party opposing summary judgment may not rest upon the mere allegations or denials of the party's pleadings, but must set forth "specific facts showing that there is a genuine issue for trial." See Matsushita Elec. Indus. Co. v. Zenith Radio, 475 U.S. 574, 586-87 (1986) (quoting Fed. R. Civ. P. 56(e) (1963) (amended 2010)); Brinson v. Linda Rose Joint Venture, 53 F.3d 1044, 1049 (9th Cir. 1995). The non-movant's bare assertions, standing alone, are insufficient to create a material issue of fact and defeat a motion for summary judgment. Anderson, 477 U.S. at 247–48.

*Correction of Military Records*

In 1946, Congress enacted 10 U.S.C. § 1552 to provide an administrative system to correct military records and review military discharges and dismissals to avoid an increasing burden imposed on Congress occasioned by discharged servicemen seeking to have the nature, character, or type of their discharge certificate corrected. See Strickland v. United

1 States, 61 Fed. Cl. 443, 448 (2004), overruled on other grounds, Strickland v. United States,
2 423 F.3d 1335, 1343 (Fed. Cir. 2005).

3       In pertinent part, 10 U.S.C. § 1552(a)(1) provides: "The Secretary of a military
4 department may correct any military record of the Secretary's department when the Secretary
5 considers it necessary to correct an error or remove an injustice. . . . [S]uch corrections shall
6 be made by the Secretary acting through boards of civilians of the executive part of that
7 military department." For the Navy and Marines, the BCNR is the statutory civilian board.

8       The applicable federal regulations implementing the administrative system to correct
9 military records and review military discharges are found at 32 C.F.R. § 723 (1997). In part,
10 the applicable regulation provides that current and former members of the Navy and Marine
11 Corps may only apply to the BCNR after first exhausting "all available administrative
12 remedies." Id., § 723.3(c)(4).

13       The Ninth Circuit has found that § 1552 decisions of the Secretary are reviewable in
14 accordance with the Administrative Procedures Act ("APA"). See Guerrero v. Stone, 970
15 F.2d 626, 628 (9th Cir. 1992). Under the APA, a federal court may set aside an agency
16 decision only if it is demonstrated to be "arbitrary, capricious, an abuse of discretion, or
17 otherwise not in accordance with law." 5 U.S.C. § 706(2)(A); see Ariz. Cattle Growers'
18 Ass'n v. United States Fish & Wildlife, 273 F.3d 1229, 1236 (9th Cir. 2001). The final
19 decision of the Secretary must be rational and based upon substantial evidence. See Barber
20 v. Widnall, 78 F.3d 1419, 1423 (9th Cir. 1996). "Substantial evidence means more than a
21 scintilla and is such that a reasonable mind may accept it as adequate to support a
22 conclusion." Id. (further citation and quotation omitted). If the evidence contained in the
23 administrative record is susceptible to more than one rational interpretation, a reviewing
24 court may not substitute its judgment for that of the agency. See Edlund v. Massanari, 253
25 F.3d 1152, 1156 (9th Cir. 2001).

26       "[J]udicial review of a military corrections board decision 'does not require a
27 reweighing of the evidence, but rather a simple determination that a reasonable mind could
28 support the challenged conclusion.'" Browder v. United States, 79 Fed. Cl. 178, 181 (2007).

**DISCUSSION**

In this APA action, Plaintiff's Complaint alleges that the final July 22, 2015 decision of the Secretary, acting through the BCNR, was arbitrary, capricious, an abuse of discretion, and was not otherwise in accordance with law, based upon the BCNR's denial of her request to correct her record to reflect an honorable discharge as opposed to a general discharge and allow her to reenlist in the Navy. (Doc. 1.)

In support of their motion for summary judgment, Defendants contend that the final decision of the Secretary is supported by substantial evidence, which decision reviewed all of the Navy's proceedings taken against Plaintiff. (Doc. 15-1 at 3 (stating "[t]he [BCNR] carefully considered documentary material consisting of proceedings of the NDRB; your previous applications and reconsideration requests; and all material submitted in support thereof to include your naval record and applicable statutes, regulations and policies.").)

The final BCNR decision which found substantial evidence for Plaintiff's discharge was mainly based upon the evidence presented at Plaintiff's initial administrative separation hearing held by the ADB. (See id. at 4.) At the initial ADB separation hearing, the Navy presented testimony from Naval Criminal Investigative Service (NCIS) Special Agent Tim Fogerty, IT2[4] Latosha Golden, USS Bainbridge Command Master Chief James Collins, and sworn written statements from OS3[5] Ryan O'Hara and IT2 Golden. (Doc. 15-2 at 99-108.) Agent Fogerty testified that he commenced an investigation when Plaintiff's command contacted NCIS about Plaintiff trying to purchase cocaine. (Id. at 99-100.) Fogerty testified that he obtained a sworn statement from O'Hara regarding Plaintiff asking O'Hara to find for purchase an eight ball of cocaine. (Id.) O'Hara stated that after Plaintiff repeatedly asked him to purchase cocaine for her, O'Hara reported it to his command. (Id.) Further, Plaintiff told O'Hara that she had used marijuana while on leave. (Id. at 101.) Fogerty testified that he found O'Hara very credible. (Id.)

---

[4] An IT2 is a Navy Information Systems Technician, Petty Officer 2nd Class.

[5] An OS3 is an Operations Specialist, Petty Officer 3rd Class.

1    IT2 Golden testified that while administering Plaintiff's urinalysis, Plaintiff made
2 statements to Golden about her "smoking weed" and "getting high." (Id. at 102.) In addition,
3 Golden provided a written statement in which she averred that Plaintiff admitted to her that
4 "[Plaintiff] had decided to smoke some weed/get high" and "she had been [at her Command]
5 for a year and they hadn't done a [urinalysis] and when she decided to get high then they
6 [gave] her a [urinalysis]." (Id. at 124.) In his written statement, OS3 O'Hara reported that
7 Plaintiff asked him if he knew anyone in Virginia who could get her an eight ball of cocaine
8 and that she asked him three times to pick up cocaine for her. (Id. at 128.) Plaintiff also
9 acknowledged to O'Hara that she had smoked marijuana while on leave from the Navy. (Id.)

10    During the hearing, Plaintiff's counsel cross-examined the Navy's witnesses,
11 including IT2 Golden, and presented her own witnesses and exhibits. (Id. at 100-107.)
12 Plaintiff testified that she knew of the NCIS investigation and had previously called O'Hara
13 "to ask about the allegations" and "to confront him." (Id. at 105-106.)

14    The ADB unanimously found, which was concurred in by Plaintiff's Commanding
15 Officer, that the evidence substantiated drug abuse and separation from the Navy. (Id. at 97-
16 98, 107-108, 147-148; Doc. 15-1 at 4.) Subsequently, the Navy rejected counsel for
17 Plaintiff's due process objections that she was not given proper notice of O'Hara's statement
18 or Agent Fogerty's NCIS investigation. (See Doc. 15-2 at 98.) Based on Plaintiff's testimony,
19 the Navy found that Plaintiff knew of the NCIS investigation and that prior to the hearing
20 she had called O'Hara "to ask about the allegations" and "to confront him." (Id. at 105-106.)

21    Based on Naval policies and procedures, the Navy mandates separation processing for
22 Navy personnel for drug abuse because it is "detrimental to good order and discipline,
23 mission readiness and appropriate standards of performance and conduct." (Id. at 118.)
24 Separation processing is mandatory when there is an "admission of drug abuse" or "one or
25 more military drug-related offenses." (Id. at 113.) The Navy defines drug abuse as "illegal
26 or wrongful use . . . of controlled substances . . . or attempts to commit drug offenses." (Id.
27 at 114.)

28    Upon review of the administrative separation process, the final BCNR decision

concluded that Plaintiff's misconduct was "too serious to warrant an honorable characterization of service. Further, the [BCNR] concluded that the administrative separation process was administratively, procedurally, and legally proper as written and filed. . . . The [BCNR] was influenced in its decision by the fact that you enjoyed due process throughout your administrative separation while represented by legal counsel." (Doc. 15-1 at 5.)

In addition to the administrative separation process, the final BCNR decision considered additional mitigation evidence that Plaintiff subsequently presented in her two applications/petitions to the NDRB and her four applications/petitions to the BCNR. (Id. at 3-6.)

In response, Plaintiff first contends that even if military decisions are subject to an exceptionally deferential standard of review, she should not have to overcome any deferential standard because her discharge was unjust to begin with, and the Defendants have been aware of this since her initial application to change her discharge. (Doc. 22 at 1.) Therefore, according to Plaintiff, Defendants have been arbitrary and capricious in denying all of her applications/petitions. (Id.) Plaintiff further contends that she never used marijuana or any drug while enlisted in the Navy and that her negative urinalysis reports support her contention. (Id. at 2.)[6]

Under the APA, a federal court may set aside an agency decision if the decision is demonstrated to be "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law. "[J]udicial review of a military corrections board decision 'does not require a reweighing of the evidence, but rather a simple determination that a reasonable mind could support the challenged conclusion.'" Browder, 79 Fed. Cl. at 181. In this case, the Court is reviewing a final decision by the Secretary of the Navy, rendered through the

---

[6] Although not relevant to the final decision of the Secretary, through the BCNR, in her response Plaintiff argues that the November 4, 2009, 5-Member panel of the NDRB almost unanimously agreed in her favor, except for 1 panel member. (Doc. 22 at 3.)
In fact, the 5-Member panel of the NDRB voted unanimously to deny Plaintiff relief, finding that her discharge was warranted and included self-admitted drug use to IT2 Golden. (Doc. 15-2 at 11.)

1   BCNR. The final decision of the Secretary of the Navy must be rational and based upon
2   substantial evidence. See Barber, 78 F.3d at 1423.

3   Here, the Court has little difficulty finding that the final decision of the Secretary of
4   the Navy was rational and based upon substantial evidence. Based on Naval policies and
5   procedures, the Navy mandates separation processing for Navy personnel for drug abuse
6   because it is "detrimental to good order and discipline, mission readiness and appropriate
7   standards of performance and conduct." (Doc. 15-2 at 118.) Separation processing is
8   mandatory when there is an "admission of drug abuse. (Id. at 113.)

9   As the Court has already detailed at length in this case, Plaintiff's record included a
10  self-admission of drug abuse to IT2 Golden, an unbiased urinalysis test observer. (Doc. 15-2
11  at 102, 124.) Further, there is additional substantial evidence that Plaintiff requested Naval
12  Serviceman O'Hara to find for her purchase an eight-ball of cocaine. This substantial
13  evidence was testified to by NCIS Investigator Fogerty at the ADB separation hearing and
14  submitted to the Navy in a sworn statement by Serviceman O'Hara. (Id. at 99-100.)

15  Next, the Court finds that administrative proceedings conducted in this matter were
16  not arbitrary, capricious, an abuse of discretion or otherwise not in accordance with law. The
17  Court denies that Plaintiff suffered a due process violation. Although counsel for Plaintiff
18  objected that she was not given proper notice of O'Hara's statement or Agent Fogerty's
19  NCIS investigation (see Doc. 15-2 at 98), the Navy found that Plaintiff knew of the NCIS
20  investigation and that prior to the ADB hearing she had called O'Hara "to ask about the
21  allegations" and "to confront him." (Id. at 105-106.)

22  Based upon the Court's finding that substantial evidence supports the decision of the
23  Secretary, the Court will not set aside the decision of the Secretary rendered through the
24  BCNR. The BCNR's decision was not arbitrary, capricious, an abuse of discretion or
25  otherwise not in accordance with law

26  Accordingly,

27  **IT IS HEREBY ORDERED** granting Defendants' Motion for Summary Judgment.
28  (Doc. 20.) The Clerk of Court shall issue judgment in favor of Defendants and terminate this

case.

**IT IS FURTHER ORDERED** denying as moot Plaintiff's Motion for Appointment of Counsel and an Extension of Time to File Cross-Motion for Summary Judgment. (Doc. 25.)

**IT IS FURTHER ORDERED** that in the docket of this case, the Clerk of Court correct the spelling of the last name of Defendant Secretary of the Navy to Ray Mabus.

DATED this 3rd day of January, 2017.

_____
Stephen M. McNamee
Senior United States District Judge